|,YELVERTON, Judge Pro Tem.
This is a dispute between divorcing spouses who were separate in property over ownership of LSU season football and baseball tickets and the right to renew. The trial judge gave the two baseball tickets to the wife and the four football tickets to the husband. From this ruling, the husband appeals. We find that all tickets and the right to renew were the separate property of the husband.
James C. Dixon and Elizabeth J. Dixon were married in East Baton Rouge Parish on March 30, 1985, where their matrimonial domicile remained until their divorce on January 28, 1998. Before their marriage, they entered into a matrimonial agreement establishing a regime of separate property. This was their regime throughout their marriage.
The matrimonial agreement stated that they would be separate in property. They formally renounced the community of ac-quets and gains. They agreed that all property of whatever kind acquired by each prior to or during the marriage should be owned solely by that person. The agreement stated that each should have the right to use, enjoy, and dispose of his or her respective separate property without the consent or concurrence of the other. It contained provisions that each would contribute to the ongoing expenses of the marriage in proportion to his means and that neither would have the authority to obligate the other except with regard to necessities. Paragraph 6 provided that upon the termination of the marriage, any property in their joint names “shall be deemed to be owned in indivisión to the proportion of one-half (½) each.”
Mr. Dixon filed for a divorce on November 13, 1997, and a judgment of divorce was granted on January 28, 1998. Mrs. Dixon filed a pleading styled “Petition for Partition of Community, with Detailed Descriptive List on Behalf of ^Elizabeth J. Dixon,” on December 19, 1997. In that petition, Mrs. Dixon acknowledged the matrimonial agreement but alleged that, nevertheless, Mr. Dixon was in possession of certain assets “that were acquired for the benefit of the married partners during their marriage.” She filed a detailed descriptive list of these assets, which at trial consisted of four LSU football season tickets and two LSU baseball season tickets in the Gold Section. Mrs. Dixon prayed that these assets be partitioned in accordance with the provisions of La.R.S. 9:2801(4), the statute which governs the partition of community property where there is a community property regime.
Mr. Dixon responded to this petition denying that there existed any community property. He disputed whether there was any property subject to settlement or division with the argument that the tickets were at best leases or revocable licenses, but averred that there was no property interest in season tickets or the right to renew. To the extent that there might be a property interest he claimed it to be his separate property.
We will not spend time defining the nature of the right conferred by the issuance of season tickets and the accompanying appreciating right to renew season tickets. It suffices that such rights are *733 valuable, people spend a lot of money for them, and they are property. These rights could have been owned jointly by Mr. and Mrs. Dixon, as between themselves, or they could have been owned separately by one of them. The only issue before us is who owns these rights.
The trial court heard three witnesses. They were Mr. Dixon, Mrs. Dixon, and Lance Buckley, the ticket manager for the Louisiana State University Athletic Department.
Mrs. Dixon testified that she understood the matrimonial agreement when she signed it. She stated that she had lived up to it, paying her share of the living | ¡¡expenses. She owned her own automobiles, had her own checking account, and her retirement benefits were separate. She acknowledged that Mr. Dixon paid for the tickets to the athletic events. She said that the tickets were not separate, but that they were a “we thing,” they were “for us.” She said that if she had it to do over again, he would have bought one ticket and she would have bought one.
Mr. Dixon testified that the reason he wanted a matrimonial agreement was because he had three children and she had none. He said there was no change in the matrimonial agreement during their marriage. The first season he bought season tickets was in 1992. Then and thereafter, he paid for the season tickets with his money. Ms. Dixon did not reimburse him and did not offer to reimburse him. He testified that the season tickets and his right to renew the tickets were his separate property. Sometimes he took his three children to the football games. Most of the time she went with him, and they invited two friends. The name Jim Dixon was fixed to each of the two baseball seats in the Gold Section. She once asked him to put her name on one of the seats, but he refused.
Mr. Buckley testified from the athletic department records. They showed that Jim Dixon had four football tickets in the south end zone, three on one row and one on the row behind it, and two baseball seats in the Gold Section side-by-side. The tickets were in his name only. He testified that Mr. Dixon had a non-transferable right to renew the season tickets, but that the right could be revoked at any time by LSU for any reason, according to their ticket policy. He explained that LSU ticket policy permitted transfer of ownership up .until six weeks before his testimony, which was on December 11, 1998, but that the policy changed on that date and transfer of ownership had been prohibited since.
|4The trial court found that both Mr. and Mrs. Dixon had an interest in the tickets. The trial judge stated, “I think that these tickets were bought for the two people to attend athletic events and I think both of them have an interest in these tickets.” Addressing the couple in the courtroom, the trial judge said, “It’s just something you did together during the marriage. You both did it .” In further oral reasons for judgment, the trial judge explained:
“I do believe you have to read paragraph 6 and I do think these two people contemplated that they might do some things that were not community property, but were things that they did together that would be owned [in] indivisión. They elected to have a separate property agreement. They also indicated in the thing that they signed, the document that they signed that they might own some things in indivisión.”
After that, stating that she was going “to go ahead and partition,” the trial judge awarded Mrs. Dixon the baseball tickets and Mr. Dixon the football tickets.
A matrimonial regime is a system of principles- and rules governing the ownership and management of the property of married persons as between themselves and toward third persons. La.Civ.Code art. 2325. A matrimonial regime may be legal, contractual, or partly legal and partly contractual. La.Civ.Code art. 2326. The legal regime is the community of ac- *734 quets and gains. La.Civ.Code art. 2327. A contractual regime is a matrimonial regime established by contract and is called a matrimonial agreement. La.Civ.Code art. 2328. Spouses are free to establish by matrimonial agreement a regime of separation of property. Id. Spouses may enter into a matrimonial agreement before or during the marriage as to all matters that are not prohibited by public policy. La. Civ.Code art. 2329. Where there exists a regime of separation of property, each spouse acting alone uses, enjoys, and disposes of his property without the consent or concurrence of the other spouse. La. Civ.Code art. 2371.
| sMr. and Mrs. Dixon chose to renounce a community property regime and enter into the contractual regime of separate property. During the marriage, both spouses strictly adhered to the matrimonial agreement by keeping separate accounts, and in fact, they were separate in property in every respect. The trial judge based her ruling on “fairness” disregarding the spouses’ intent to have separate property through the matrimonial agreement.
Comment(b) to Louisiana Civil Code Article 2328 states that a matrimonial agreement is governed by the general rules of conventional obligations. We find that to be a correct statement. Mrs. Dixon sought to prove that she was a part owner of property admittedly purchased by Mr. Dixon with his own funds and put in his name. The matrimonial agreement in this case is a simple contract which presents no interpretation problems in the context of the issue before us. The tickets and the right to renew were bought by Mr. Dixon with his money. They became his separate property. He could do what he wanted to with them. Mrs. Dixon failed to prove any agreement that they would be jointly owned. Mrs. Dixon did not pay for the tickets, nor did she reimburse Mr. Dixon for an interest in the tickets. The tickets were not in their joint names, so Paragraph 6 of the matrimonial agreement does not apply. She failed to prove that he made a gift to her of any part of the tickets or the right to renew. The fact that she, along with others, enjoyed the benefit of the tickets and a seat at the athletic events did not make her a co-owner of whatever right the ticket owner possessed. Making her a co-owner was something that Mr. Dixon had the right to confer upon her, but he did not do so. She is not aided by any presumption that property acquired during the marriage was part hers. She had to prove by a preponderance of the evidence that she had a joint interest in the tickets. She did not |fido so. Mrs. Dixon has not met her burden of proving that she has a joint interest in the tickets.
CONCLUSION
Based on the foregoing reasons, the judgment of the trial court is reversed. Ms. Dixon’s petition is ordered dismissed. Mrs. Dixon will pay all costs here and below.
REVERSED AND RENDERED.